UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL BENJAMIN,<br>　　　　Plaintiff,<br>　v.<br>WILINE NETWORKS, INC.,<br>　　　　Defendant. | Case No. 17-cv-06118-KAW<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER BRIEF**<br>Re: Dkt. No. 62 |

Plaintiff Abdul Benjamin filed this case against Defendant Wiline Networks, Inc., alleging discrimination on the basis of race and religion. (Compl. ¶ 1, Dkt. No. 1-1.) On March 22, 2019, the parties filed a joint discovery letter regarding Defendant's responses to Plaintiff's interrogatories. (Discovery Letter, Dkt. No. 62.) Having reviewed the letter, the Court GRANTS Plaintiff's request for amended responses.

## I.　BACKGROUND

Plaintiff worked as an account manager for Defendant for approximately four to six months. (Compl. ¶¶ 2, 15; Discovery Letter at 4.) Plaintiff alleges that his direct supervisor, Greg Kopecky, would openly discriminate against him, giving Plaintiff accounts based on his race while reserving the best leads and opportunities to non-African-American account managers. (Compl. ¶¶ 17-18.) Mr. Kopecky would also denigrate Muslims. (Compl. ¶ 21-22.) When Plaintiff complained of this behavior, he was allegedly terminated. (Compl. ¶ 23.)

As relevant to this discovery dispute, Plaintiff states that during its deposition, Defendant testified about Plaintiff's performance, the reasons for his termination, and that those reasons were developed during sales managers meetings while reviewing Plaintiff's performance. (Discovery Letter at 1.) Accordingly, Plaintiff served interrogatories seeking information in support of that

deposition testimony. Interrogatory Nos. 6 and 7 sought the dates of the senior sales management meetings and their attendees, while Interrogatory Nos. 8 and 9 sought information on the discussions at those meetings regarding sales performance and activity. (*Id.* at 4.) Interrogatory Nos. 10 and 11 sought information related to verbal warnings given to other account executives during their first three months of employment. (*Id.*) Finally, Interrogatory No. 12 sought information of any sales made to accounts assigned to Plaintiff after Plaintiff's termination, Interrogatory No. 13 requested that Defendant identify Plaintiff's accounts located in the San Francisco Tenderloin District, and Interrogatory No. 14 asked that Defendant identify the account executive assigned to the Tenderloin accounts before Plaintiff. (*Id.* at 5.)

Defendant objected to each of the interrogatories as not being relevant, and asserted it did not have responsive information except as to Interrogatory No. 13 because there are no records of sales meetings or actions taken at sales meetings. (Discovery Letter at 1, 3.) With respect to Plaintiff's accounts in the Tenderloin, Defendant responded that Plaintiff was already given a print-out of every building Plaintiff was assigned to. (*Id.*) On February 19, 2019, Defendant's 30(b)(6) witnesses allegedly testified about the Senior Sales Management Meetings, including their chronological order, discussions in those meetings, decisions made in those meetings, and action items that followed those meetings. (*Id.* at 2-3.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Discovery need not be admissible to be discoverable. *Id.* The court, however, "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Furthermore, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

1 undue burden or expense," including by precluding discovery, by conditioning disclosure or
2 discovery on specified terms, by preventing inquiry into certain matters, or by limiting the scope
3 of discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on
4 the trial court to decide when a protective order is appropriate and what degree of protection is
5 required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. DISCUSSION

### A. Relevance

Defendant argues that the information sought is not relevant because Plaintiff's case is based on whether management "utter[ed] racial slurs and comments disparaging Plaintiff's Muslim religion such that Plaintiff was forced to quit his job." (Discovery Letter at 3.) Thus, Defendant appears to suggest that information is not discoverable unless it is related to harassing conduct. (*Id.* at 5.)

The Court disagrees. It appears that Defendant testified that Plaintiff's performance contributed to his termination, and those reasons were discussed during the sales manager meetings while reviewing Plaintiff's sales performance. (Discovery Letter at 1.) Thus, even if not related to harassment, such information may lead to the discovery of relevant evidence. Likewise, evidence regarding warnings given to other account executives may go to pretext. Finally, information about Plaintiff's accounts, including whether any sales were made to those accounts after his alleged termination, go directly to his allegations that he was given less favorable assignments and Defendant's defense that "Plaintiff was a terrible salesman" and that he was assigned some of the most expensive buildings in the Financial District (*Id.* at 4, 5.)

### B. Availability of Evidence

Defendant also contends that the information is not available or has already been provided to Plaintiff. (Discovery Letter at 3, 5.)

First, as to the list of Plaintiff's accounts in the Tenderloin, Defendant argues it has already provided a list of all of Plaintiff's accounts. (Discovery Letter at 3.) In the interest of moving discovery forward, and because Defendant points to no burden of providing the information requested, the Court ORDERS Defendant to identify Plaintiff's accounts in the Tenderloin.

3

Second, as to the sales meetings or actions taken at sales meetings, Defendant contends there are no records because Defendant did not make minutes for these meetings. (Discovery Letter at 3.) Defendant does not dispute, however, that it has some information, as Defendant's 30(b)(6) witnesses testified about the chronological order of specific senior staff sales management meetings, the discussions in those meetings, decisions made in those meetings, and action items that followed those meetings. (Discovery Letter at 2-3.) Although Defendant may not have formal records of those meetings, that is not to say that Defendant does not have *any* information about those meetings, sufficient to answer the interrogatories to the best of its abilities. The Court ORDERS Defendant to provide any responsive information that it has.

Third, Defendant provides no explanation for why it would not have information as to verbal warnings given to other account executives, sales made to Plaintiff's accounts after Plaintiff was terminated, or account executives previously assigned to Plaintiff's accounts. Accordingly, the Court ORDERS Defendant to provide any responsive information it has.

### IV. CONCLUSION

For the reasons stated above, the Court ORDERS Defendant to provide amended responses to the interrogatories in dispute within **7 days** of this order. Defendant may not object on relevancy grounds.

IT IS SO ORDERED.

Dated: April 1, 2019

KANDIS A. WESTMORE
United States Magistrate Judge

4